GREEN, Judge.
Ben Wygodny (“Wygodny”) was the plaintiff below and appeals a final judgment of involuntary dismissal entered at the close of his case in chief at a nonjury trial. He essentially argues that although he made a prima facie case, the trial court erred in granting the defendants’ motion for involuntary dismissal based upon the court’s weighing of the evidence and judging the credibility of the witnesses. We concur and for the reasons which follow, we reverse and remand for a new trial as to defendants K-Site 600 Associates and Ben Franklin Properties 500, Inc. (collectively “K-Site”) but affirm as to defendant Mystic Pointe Tower 500 Condominium Association (“Mystic Pointe”).
The facts briefly are that in October 1989, Wygodny entered into a contract with K-Site for the purchase of a 40-foot boat slip which was to be constructed along with a marina at the Mystic Pointe condominium development. Specifically, Wygodny purchased boat slip 29 at a cost of $38,500 and gave a security deposit to K-Site in the amount of $19,500. Wygodny testified that he selected this particular slip because it was visible to him from his condominium unit at Mystic Pointe and was within the 40-foot range.
The relevant provisions of Wygodny’s contract with K-Site provided that:
6) Construction Specifications. The Unit will be constructed in substantial accordance (in Seller’s opinion) with the plans and specifications therefore kept in Seller’s construction office, as such plans and specifications are amended from time to time. Buyer acknowledges that Seller has requested Buyer to inspect the plans and specifications for the Condominium, specifically to examine the dimensions of the Unit (to assure the Buyer’s vessel will not extend outside the boundaries of the Unit) and to examine the dimensions of the Common Element waterways. Seller may make any changes in the plans and specifications that it deems appropriate at any time, as long as those changes do not, in the Seller’s opinion, seriously and adversely affect the market value of the Unit....
... without limiting Seller’s general right to make changes, Buyer specifically agrees that changes in the dimensions of the Unit (as to height and shape), in the location of mooring piles, walkways, piers, bulkheads, dock boxes (if any), utility (including, but not limited to, electrical and water) lead-ins, outlets and electric panel boxes, and in the general layout of the Unit and Condominium, may be made by the seller in its sole discretion.
37) Seller’s Opinion/Discretion.... [Wjherever this Agreement requires or permits Seller’s opinion or discretion (or words of similar import) to govern any matter, Seller will not be permitted, for purposes of this Agreement, to form an opinion which is entirely unreasonable, nor to exercise its discretion in an entirely unreasonable manner. However, if any such opinion or exercise of discretion is not entirely unreasonable, it will control for purposes of this Agreement.
Without limiting the generality of the foregoing, wherever this Agreement specifically permits Seller to act in its sole discretion or to make a decision which may be unreasonable (or words of similar import), Seller’s actions or decisions with respect to such matters will control for purposes of this Agreement even if unreasonable.
*581 The construction of the marina and boat slips were completed some two years later. Prior to closing, Wygodny learned that K-Site had made alterations to the original plans for the marina that included changes to his boat slip as well. Specifically, K-Site had constructed a foot bridge connecting a pool to the condominium tower adjacent to Wy-godny’s boat slip and had installed pilings at the rear of the slip. Wygodny claims that these alterations would affect his ability to access his slip. He thereafter demanded a refund of his security deposit and when that was refused, he instituted the instant lawsuit.
At the trial, Wygodny testified as to why he purchased the slip and that the alterations would affect his ability to access the slip. Additionally, he put on the testimony of two expert witnesses, one of whom is a state certified general appraiser and the other a boat captain who is knowledgeable about docking procedures. According to the appraiser, the slip was impaired because its market value was decreased as a result of the bridge and pilings. The boat captain characterized the alteration as a “telephone pole in the middle of a driveway” and testified that the average boater would have a lot of difficulty getting a 40-foot boat in and out of the slip.[1]
Based upon this evidence, the defendants moved for a directed verdict[2] at the close of plaintiffs case. It is obvious that the trial court granted the motion based upon a weighing of the evidence and finding that the testimony of the expert witnesses was unworthy of belief. In so doing, the trial court erred as a matter of law.
Where a plaintiff has established a prima facie case in a nonjury trial, the trial judge may not weigh the evidence and rule in the defendant’s favor before the defendant presents his evidence. Tillman v. Baskin, 260 So.2d 509 (Fla.1972); Palm Beach Mall, Inc. v. Walker, 585 So.2d 1149 (Fla. 4th DCA 1991); Saporito v. Madras, 576 So.2d 1342 (Fla. 5th DCA 1991); North Am. Mktg. Corp., Inc. v. Traveler’s Ins. Co., 405 So.2d 1019 (Fla. 3d DCA 1981).
In viewing the plaintiffs case in a light most favorable to the plaintiff, Wygodny did bring forth some evidence of a decrease in market value of his slip as a result of the changes. He also put forth evidence that his slip had been rendered inaccessible to 40-foot boats. The defendants’ challenges to the validity of this evidence during cross examination was not appropriate for consideration by the trial court even in its role as the trier of fact.
As one court has held:
[Wjhere plaintiff has made a prima facie case in a nonjury trial, the trial court should not grant a motion for involuntary dismissal at the conclusion of plaintiffs case, even though the trial court as the trier of facts feels that the plaintiff has not sustained his burden of proof.
Wimbledon Townhouse Condominium I, Ass’n., Inc. v. Wolfson, 510 So.2d 1106, 1109 (Fla. 4th DCA 1987) (citing Buchanan Constr., Inc. v. City of Tallahassee, 308 So.2d 613 (Fla. 1st DCA 1975)).
It was therefore error for the trial court to adjudicate this ease on the merits at the close of the plaintiffs case in chief. Further, this court has held that this error is not subject to the harmless error test. Miami Purveyors, Inc. v. Forte, 407 So.2d 330 (Fla. 3d DCA 1981), rev. denied, 413 So.2d 876 (Fla.1982). Thus, we must reverse the judgment and remand for a new trial only against K-Site 600 Associates and Ben Franklin Properties 500, Inc.
As to defendant Mystic Pointe, we affirm the judgment of involuntary dismissal because Wygodny put on no evidence to indicate that Mystic Pointe was in any way connected with his purchase of the boat slip. As such, it is apodictic that involuntary dismissal was properly entered in favor of Mystic Pointe. The law is settled that the reasons *582 which form the basis of a lower court’s order or judgment are not controlling on appeal, and “even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it.” Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979).
For the foregoing reason, we affirm as to defendant Mystic Pointe and reverse and remand for a new trial as to the remaining defendants.

. He did acknowledge on cross examination, however, that boats of a smaller size would have no problems gaining access to the slip.

. K-Site’s motion was inadvertently styled a motion for directed verdict. In a bench trial, however, the appropriate motion is for involuntary dismissal. Thalgott v. Thalgott, 571 So.2d 1368, 1370, n. 3 (Fla. 1st DCA 1990); Fla.R.Civ.P. 1.420(b).